Argued and submitted February 5, affirmed July 10, petition for review denied December 12, 2013 (354 Or 597)

ERNEST N. LOTCHES,
*Petitioner-Appellant,*

*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
01C18545; A145569

306 P3d 768

Bronson D. James argued the cause for appellant. With him on the brief was JDL Attorneys, LLP.

Kathleen Cegla, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Petitioner appeals a judgment denying his petition for post-conviction relief. We affirm.

Petitioner alleged that he was denied adequate assistance of trial counsel under Article I, section 11, of the Oregon Constitution.[1] At his initial trial, a jury convicted petitioner of three counts of aggravated murder, one count of attempted aggravated murder, one count of attempted murder, one count of assault in the first degree with a firearm, one count of robbery in the first degree, and one count of felon in possession of a firearm, and imposed a sentence of death on the aggravated murder counts. Petitioner alleges that trial counsel failed to investigate and present a "culturally attuned" defense emphasizing self-defense and post-traumatic stress disorder, failed to investigate petitioner's mental health history in order to buttress these defenses, and interfered with petitioner's right to testify, noting that the record does not establish that trial counsel informed petitioner of his right to testify. Petitioner asserts that those failures amounted to constitutionally inadequate assistance of counsel.[2]

We summarize the facts from the post-conviction court's findings and from the record. We are bound by a post-conviction court's findings of fact if they are supported by evidence in the record,[3] and we review its legal conclusions for errors of law. *Derschon v. Belleque*, 252 Or App 465, 466, 287 P3d 1189 (2012), *rev den*, 353 Or 208 (2013).

---

[1] "In all criminal prosecutions, the accused shall have the right to *** be heard by himself and counsel[.]" Or Const, Art I, § 11. The federal and state constitutional standards are similar, *Montez v. Czerniak*, 237 Or App 276, 283, 239 P3d 1023 (2010), *rev allowed*, 351 Or 321 (2011), and petitioner failed to offer a separate argument under the Sixth Amendment to the United States Constitution. Consequently, we do not separately address his federal claim. *See Koch v. State of Oregon*, 252 Or App 657, 658 n 1, 288 P3d 582 (2012) (explaining that we do not develop a party's argument if the party has not endeavored to do so).

[2] Petitioner's appellate counsel has repeatedly made clear, most recently at oral argument, that in accordance with petitioner's directions, no arguments challenging the results of the penalty phase have been offered.

[3] Petitioner does not challenge any of the factual findings of the post-conviction court.

The convictions at issue in this case resulted from an altercation in Portland, Oregon, on August 22, 1992. *State v. Lotches*, 331 Or 455, 457, 17 P3d 1045 (2000). A string of confrontations culminated when petitioner fired a handgun at several unarmed people and one armed security officer. *Id.* at 458-59. After petitioner's attempts at flight failed, he surrendered to the police. *Id.* at 460. There was evidence that petitioner was intoxicated at the time. *Id.* at 461. Petitioner pleaded not guilty to all charges in a 10-count indictment. *Id.*

The trial court appointed two experienced attorneys to represent petitioner. Those attorneys, and their investigators, met with petitioner repeatedly. During the entire period of preparation and the trial itself, petitioner maintained that he remembered nothing beyond the initial confrontation. Those denials included his testimony at the penalty phase that he could remember nothing about the shooting and that all he remembered about that day was that he had been drinking.

The jury trial focused on petitioner's mental state as trial counsel pursued a defense of "guilty but insane." Petitioner was convicted of three counts of aggravated murder, one count of attempted aggravated murder, one count of attempted murder, one count of assault in the first degree with a firearm, one count of robbery in the first degree, and one count of felon in possession of a firearm. *Id.* at 457. The jury acquitted petitioner on one count of attempted murder. *Id.* at 461. After a penalty-phase proceeding, petitioner was sentenced to death. *Id.*

On direct and automatic review, the Oregon Supreme Court reversed two of the convictions for aggravated murder, but affirmed the remaining convictions, including one count of aggravated murder, and affirmed the death sentence. *Id.* at 457. Petitioner sought post-conviction relief and, on June 23, 2009, the post-conviction court conducted a hearing on petitioner's Ninth Amended Petition for Post-Conviction Relief.

Petitioner is a member of the Native American Klamath-Modoc tribe and the hearing included extensive testimony about the history of the Klamath-Modoc people and various egregious acts of misconduct perpetrated against them by, *inter alia*, the United States government. There was also extensive evidence as to petitioner's own dysfunctional family and traumatic experiences and some evidence as to the extent that those experiences might have affected petitioner. The post-conviction court concluded that the evidence failed to establish inadequate performance by counsel and that, even assuming constitutionally inadequate performance, there had been no showing of prejudice. The post-conviction court denied all relief, and petitioner now appeals.

"The burden is on petitioner to show, by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result." *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991) (citing ORS 138.620(2)). In order to satisfy that standard under Article I, section 11, a petitioner must demonstrate that the failure to exercise reasonable professional skill and judgment had a tendency to affect the result of the trial. *Stevens v. State of Oregon*, 322 Or 101, 110, 902 P2d 1137 (1995).[4] It is the task of the post-conviction court to reconstruct trial counsel's challenged conduct in light of the circumstances presented at the time of the alleged error with an eye toward elimination of the distorting effects of hindsight. *Montez*, 237 Or App at 283 (citing *Strickland v. Washington*, 466 US 668, 689, 104 S Ct 2052, 80 L Ed 2d 674 (1984)). In reviewing a claim of constitutionally inadequate assistance of counsel, the post-conviction court "will not second-guess a lawyer's tactical

---

[4] As to prejudice, petitioner cites several federal cases for the proposition that, under the Sixth Amendment, a court may not need to analyze the individual prejudicial effects of each deficiency in trial counsel's performance when "cumulative prejudice" from those deficiencies supports a conclusion of ineffective assistance. Petitioner acknowledges that no Oregon court has applied a cumulative error analysis, but he urges us to adopt a similar approach under Article I, section 11. Because, as explained below, we conclude that the post-conviction court correctly concluded that petitioner had failed to prove that his trial counsel was deficient in any of the alleged respects, we need not reach petitioner's "cumulative prejudice" argument.

decisions unless those decisions reflect an absence or suspension of professional skill and judgment[.]" *Cunningham v. Thompson*, 186 Or App 221, 226, 62 P3d 823 (2003), *rev den*, 337 Or 327 (2004). In summary, a post-conviction court must view a claim of constitutionally inadequate assistance of counsel in a manner highly deferential to the trial attorney. *Hayward v. Belleque*, 248 Or App 141, 148, 273 P3d 926 (2012), *rev den*, 353 Or 208 (2013) (citing *Kimmelman v. Morrison*, 477 US 365, 381, 106 S Ct 2574, 91 L Ed 2d 305 (1986)).

There is no single, succinct, clearly defined standard for determining adequacy of counsel. *Stevens*, 322 Or at 108. The Oregon Constitution does not give a criminal defendant the right to a perfect defense, but requires only that the lawyer do those things reasonably necessary to diligently and conscientiously advance the defense. *Id.* The exercise of reasonable professional skill and judgment generally requires an investigation that is "legally and factually appropriate to the nature and complexity of the case so that the lawyer is equipped to advise and represent the client in an informed manner." *Id.* The post-conviction court must therefore consider and determine whether petitioner's trial counsel's investigation was "legally and factually appropriate to the nature and complexity of the case so that the lawyer is equipped to advise and represent [petitioner] in an informed manner." *Id.* Post-conviction relief is a statutory civil cause of action where petitioner bears the burden of proof and, having failed before the post-conviction court, must now persuade this court that the unchallenged factual findings indisputably lead to different legal conclusions from those reached by the post-conviction court. In other words, given petitioner's acceptance of the post-conviction court's findings, he can prevail on appeal only if those findings necessitate the granting of one or more of his legal claims.

As noted, petitioner alleged that he was denied adequate assistance of counsel under Article I, section 11, based on, *inter alia*, counsel's alleged failure to investigate his cultural background and offer a defense based upon the unique factors in petitioner's history, particularly the experiences he suffered as a member of the Klamath-Modoc tribe.

Petitioner's argument fails because it is not merely inconsistent with the evidence, but contradicted by the post-conviction court's findings. Specifically, the post-conviction court found that, even if petitioner's trial attorneys had considered a "culturally attuned" defense, they would have rejected such an approach because it would have been inconsistent with the other evidence and inconsistent with establishing credibility with the jury. For example, that defense was inconsistent with the petitioner's own deposition testimony regarding his reactions. In his deposition, petitioner claimed that his reaction that resulted in the murder was a function of the years that he had spent in prison. He presented no evidence to show that he had told his attorneys about any connection between his conduct on August 22, 1992, and his Native American heritage. Nor did he present any evidence that his attorneys knew, or should have known, in the exercise of reasonable professional performance that the plight of the Klamath-Modoc tribe had any significant relationship to the conduct for which petitioner was tried and convicted. Trial counsel's investigation was "legally and factually appropriate" to this case. *Stevens*, 322 Or at 108. There exists, therefore, no legal error.

Petitioner next claims that his trial attorneys failed to investigate his mental health history in order to better buttress the defense case. Petitioner argues that it was insufficient for trial counsel to investigate his mental health as they had in order to prepare his insanity defense. He now argues that trial counsel were required to relate the results of the mental health history investigation to his Klamath-Modoc heritage.

The claim that petitioner's trial attorneys failed to adequately investigate his mental health history is clearly contradicted by the record. Petitioner's trial attorneys reviewed thousands of pages of petitioner's criminal and mental health history. Petitioner had had success utilizing the insanity defense in earlier criminal cases, and his trial attorneys reasonably concluded, after investigation and consultation with experts, that such a defense was worth presenting. The post-conviction court found that "[p]etitioner wanted his counsel to present an insanity defense, and he

was heavily invested in that defense." In a case with such an extended string of criminal acts and extensive evidence, any approach is fraught with risk and we will not second-guess the strategic choices of petitioner's trial attorneys. As we stated earlier, petitioner explained in his deposition that his reaction that resulted in the murder was a function of the years that he had spent in prison, rather than his experience as a Native American or related family problems. Once again, trial counsel's investigation was legally and factually appropriate to this case and there exists no legal error.

Petitioner finally argues that the record does not disclose whether trial counsel explicitly informed petitioner of his right to testify at trial. This mercurial claim made a metamorphosis from "[p]etitioner's trial counsel interfered with his right to testify at trial" to "the record does not disclose that defendant's counsel informed defendant that he had the right to testify." However petitioner characterizes the claimed error, the post-conviction court's factual findings fully dispose of the issue. The post-conviction court specifically found that "petitioner knew he could testify and had decided not to testify before the defense closed its case-in-chief." The post-conviction court added, "In any event, petitioner presented no persuasive evidence to prove that he still wanted to testify when the defense closed its case-in-chief."

On direct appeal, the Supreme Court determined that the petitioner had "waived his right to testify a second time at the conclusion of the trial." *Lotches*, 331 Or at 485. Petitioner does not assert, nor is there any evidence, that trial counsel subverted his right to testify. Petitioner bore the burden of proof in the post-conviction case and simply failed to offer any evidence to support the claimed misconduct or the claimed error. The post-conviction court found that petitioner decided not to testify, and petitioner has not challenged that finding.

The post-conviction court correctly concluded that petitioner received constitutionally adequate representation.

Affirmed.